IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FRATERNIDAD INTERNACIONAL ASAMBLEAS DE DIOS AUTONOMAS HISPANAS, INC.**<br>Plaintiff<br><br>v.<br><br>**THE GENERAL COUNCIL OF THE ASSEMBLIES OF GOD, et al.**<br>Defendants | **Civil No. 14-1532 (DRD)** |

## OPINION & ORDER

It is well known that federal tribunals are courts of limited jurisdiction. Moreover, pursuant to constitutional authority, congress enacted a statute that restricts the diversity jurisdiction of district courts. See U.S. Const. art. III, §§ 1-2; 28 U.S.C. § 1332. Over time, diversity jurisdiction has come to be one of the major avenues traversed in order to reach the federal judiciary. The instant case tests the limits of diversity jurisdiction, specifically with regard to its amount-in-controversy requirement.

Fraternidad Internacional Asambleas de Dios Autónomas Hispanas, Inc. ("FIADAH") is suing The General Council of the Assemblies of God ("GCAG") for noncompliance with a settlement agreement. The causes of action brought forth by FIADAH are for, *inter alia,* damages, attorneys' fees, and injunctive relief.[1] The lawsuit originated in state court but was *removed* to federal court by GCAG on the basis of diversity jurisdiction. See 28 U.S.C. §§ 1441 *et seq.* However, FIADAH filed a motion to remand the case back to state court because the amount in controversy purportedly

---

[1] It should be noted that none of these causes of action invoke federal law; hence, federal-question jurisdiction is unavailable to the parties in the case at bar. See 28 U.S.C. § 1331.

falls short of the jurisdictional threshold of § 1332. See Docket No. 7. For the reasons set forth below, the motion to remand is hereby **DENIED**.

## I.   TRAVEL OF THE CASE

Before delving into the subtleties of the case at bar, it is best to first take a step back and detail the procedural history between the parties. The origins of this legal dispute arise from a prior lawsuit that was filed thirteen years ago in this same district. See 02-cv-2360 (GAG). In said case, the roles were inverted: GCAG was the plaintiff and FIADAH was the defendant.[2] GCAG, which is one of the largest Pentecostal ministries in the world, owns several federal trademarks for the phrases "Assemblies of God" and "Asamblea de Dios." Among other claims, GCAG had previously asserted that FIADAH was responsible for trademark infringement with respect to said phrases. It is unnecessary for the Court to delve too deep into the intricacies of this prior lawsuit. Rather, to make a long story short, the case culminated in a settlement agreement that allowed for the coexistence of their respective brands. See 02-cv-2360, Docket No. 105-2.

The settlement agreement states that FIADAH would keep its right to use the brand, "Fraternidad Internacional Asamblea de Dios Autónomas Hispanas, Inc."; its abbreviation, "FIADAH"; and its logo. The agreement was intended to definitively end any disputes as to the alleged probability of confusion, equivalence, and similarity between the brands. Moreover, pursuant to the agreement, GCAG was required to vacate its opposition to the brand registration for FIADAH's logo in the Department of

---

[2] For this reason, the Court—in an effort to avoid confusion—shall refrain from referring to the parties as "Plaintiff" or "Defendant."

- 3 -

State of Puerto Rico.  In the end, as a result of this settlement transaction, the District Court, by way of the Hon. Salvador E. Casellas, entered judgment dismissing said case with prejudice on September 7, 2005.  However, this was only the beginning of the clash between the parties.

Seven years later, on June 13, 2012, FIADAH filed several trademark applications before the United States Patent and Trademark Office.  These trademarks were for "Fraternidad Internacional Asamblea de Dios Autónomas Hispanas," "FIADAH," "FIADAH unidos por amor," and a logo.  When GCAG filed oppositions to these applications, FIADAH cried foul.  According to FIADAH, GCAG's oppositions to these applications contravene the scripture of the settlement agreement.  Consequently, FIADAH returned to the District Court via motion in order to seek enforcement of the settlement agreement.[3]

However, this motion and a subsequent motion for reconsideration were denied on the grounds that the District Court did not retain jurisdiction to enforce the terms of the settlement agreement.  Hence, in order to further pursue enforcement of the agreement, FIADAH was forced to file a new lawsuit.  However, in an effort to obtain a swifter resolution, and to better preserve economic resources, FIADAH chose to file the enforcement action in state court instead of appealing the District Court's jurisdictional ruling.  Notwithstanding, the parties did not remain in state court for long.

It appears that all roads lead to Rome because the case has made its return to the District Court once again.  This time GCAG arrives at the door of the federal judiciary by way of a *removal*.  See 28 U.S.C. §§ 1441 *et seq.*  GCAG attempts to

---

[3] Although the enforcement action was brought under the same case caption, 02-cv-2360 (GAG), the case had been reassigned to the Hon. Gustavo A. Gelpí.

unlock this door by using a key etched with the words: "diversity jurisdiction." See 28 U.S.C. § 1332. On the other hand, FIADAH contends that the jurisdictional "amount in controversy" has not been met. Thus, FIADAH calls for the Court to keep this door closed and remand the instant case back to state court. See Docket No. 7.

## II. PRICE OF ADMISSION

There are two obstacles that a proponent of diversity jurisdiction must overcome before being allowed to enter the realm of the federal judiciary: (i) demonstrating the existence of complete diversity of citizenship between the parties; and (ii) establishing that the amount in controversy exceeds $75,000, exclusive interests and costs. See 28 U.S.C. § 1332.[4] FIADAH's attack is directed exclusively against the latter requirement; hence, FIADAH concedes that, at least for the sake of this motion, complete diversity of citizenship exists between the parties. Therefore, for ease of exposition, the Court shall limit its discussion to the amount-in-controversy prong.

---

[4] 28 U.S.C. § 1332

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

. . .

At the outset, the Court recognizes that the "determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352 (1961) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941)); see also Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir. 2004) ("Using Puerto Rico Supreme Court cases to analyze the amount-in-controversy for diversity purposes is the equivalent of comparing apples and oranges.").

The second observation is that the Court must determine which party carries the burden of persuasion as to the existence of federal jurisdiction. A determination of this nature depends on whether the case was originally filed in federal court or reached the federal judiciary via removal. In cases that originate in federal court, it is the plaintiff who carries the burden; on the contrary, in removal cases the burden is carried by the defendant. See e.g. Esquilin-Mendoza v. Don King Productions, Inc., 638 F.3d 1 (1st Cir. 2011); and Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 50-51 (1st Cir. 2009); and 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702.1, at 330 (4th ed. 2011).

Similarly, it should be noted that the amount-in-controversy analysis changes depending on whether the case reached the federal judiciary via removal or was originally filed in federal court. For instance—when the amount in controversy is challenged in cases that commence in federal court—the plaintiff must, in order to repel the challenge, make a showing that there is *no* "legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938) (cited in approval in Esquilin-Mendoza, 638 F.3d at 4).

On the contrary—in cases where the amount in controversy is challenged in removal cases—it is the defendant that must make a showing that there is a "reasonable probability" that plaintiff's claims exceed the jurisdictional amount. Amoche, 556 F.3d at 50-51 (1st Cir. 2009); see also Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 80 n. 13 (1st Cir. 2014); c.f. 28 U.S.C. § 1446(c)(2)(B).[5]  Clearly, a grander burden is placed on the shoulders of a defendant in the removal context than on a plaintiff in cases originating in federal court.  "This discrepancy in treatment of plaintiffs and defendants may be justified by the historical tradition that the plaintiff is the master of the forum and is empowered to choose the court system and venue in which litigation will proceed." 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3725, at 95 (3d ed.1998) (cited in approval in Amoche, 556 F.3d at 50-51).

Having introduced these general concepts, the next step on the way to determining the "amount in controversy" is to scrutinize the actual claims for relief contained in FIADAH's complaint.

### III.  INDEMNIFICATION ALLEGATIONS

Normally, "plaintiff is the master of the statement of his claim." 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702, at 322 (4th ed. 2011). Moreover, absent a showing of bad faith, a plaintiff may validly fashion a lawsuit that

---

[5] It should be noted that the "preponderance of the evidence" language of 28 U.S.C. § 1446(c)(2)(B) is equivalent to the First Circuit's "reasonable probability" standard.  "[T]he reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits." Amoche, 556 F.3d at 50 (collecting cases).  "Yet because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence." Id. (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)).

seeks an amount under the jurisdictional threshold of federal courts in an effort to evade federal jurisdiction. Id. "If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." St. Paul, 303 U.S. at 294. However, 28 U.S.C. §1446(c)(2) allows a removing defendant to "assert the amount in controversy if the initial pleading seeks-- (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded."

With these caveats in mind, the Court turns to FIADAH's complaint in search for its causes of action and, when applicable, the monetary amount demanded. These allegations will be the Court's starting point in determining a reasonable amount in controversy. For the sake of clarity, the Court encloses the relevant allegations below:

> FOR ALL OF THE ABOVE, we respectfully request the Honorable Court to . . . rule in favor of [FIADAH], ordering [GCAG] to:
> (1) comply truthfully, fully, and specifically with the settlement agreement signed between the parties;
> (2) as a consequence of the above, order [GCAG] to voluntarily desist from the suit of Consolidated Opposition pending before the USPTO;
> (3) order [GCAG] to pay to [FIADAH] an amount of **no less than . . . $40,000.00** for damages, mental anguish, and harm caused to [FIADAH], and pay the corresponding **legal interest**;
> [(4)] . . . pay an amount **no less than $30,000.00** for **costs, expenses, and attorney's fees in this suit**; and
> [(5)] render any other judgment applicable under law.
>
> (emphasis provided).
>
> Docket No. 1-1.

Prior to moving on, however, it is of critical importance to note that a few of these requests must be excluded from the amount-in-controversy equation. "[A]ttorneys' fees are generally not considered when calculating the amount in controversy except where

- 7 -

provided by contract or explicitly allowed by statute." Romulus, 770 F.3d at 81 n. 15 (citing Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001)).  Though, neither the contract—which in this case would be the settlement agreement—nor the applicable statute provides that attorneys' fees are to be granted to either party.  Furthermore, 28 U.S.C. § 1332 explicitly excludes "interest and costs" from the amount-in-controversy calculation.  Additionally, FIADAH's referral to "expenses," and even "attorneys' fees," may be joined together with "costs," which are to be excluded. See 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3704.2, at 648 (4th ed. 2011).  As such, FIADAH's claims for "legal interest," "costs, expenses, and attorney's fees" are all excluded from the amount-in-controversy calculus.[6]

Recapitulating, the Court has effectively stricken FIADAH's fourth call for relief—"pay an amount no less than $30,000.00 for costs, expenses, and attorney's fees in this suit"—from consideration in the jurisdictional calculation.  Thus, the only explicit monetary figure remaining is the third prayer for relief, which requests "an amount no less than . . . $40,000."  However, the remaining (non-excluded) causes of action—which essentially call for injunctive and/or equitable relief—may be valued and considered as part of the amount-in-controversy equation. See e.g. Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004); and 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3708 (4th ed. 2011).  Therefore, all that remains is for the Court to allocate monetary values to the variables contained in the

---

[6] The fact that FIADAH seeks "costs, expenses, and attorney's fees" incurred "in this suit" precludes any argument that any known exception to this principle may apply. See e.g. Brown v. Webster, 156 U.S. 328 (1895) (distinguishing between an accessory interest claim, which is excluded from the calculation, and a principal interest claim, which is included in the calculation).

amount-in-controversy equation. Should the mathematics yield a value that exceeds $75,000, the motion to remand shall be denied.

### IV.  COMPENSATION CALCULATION

After careful deliberation, the Court has come to the conclusion that there *is* a "reasonable probability" that the "amount in controversy" exceeds $75,000. As long as reasonable monetary figures are assigned to its variables, the equation exceeds the jurisdictional amount no matter how it is factored. To demonstrate this point, the Court shall presume that the request for damages is $40,000. This is the best-case scenario for FIADAH to prevail on this motion to remand in light of the complaint's request for damages being phrased in the form of "no less than . . . $40,000." Yet, FIADAH is still unable to prevail. The problem with FIADAH's remand argument is that there is a "reasonable probability" that the remaining claims for injunctive and/or equitable relief exceed $35,000. "Courts have repeatedly held that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation." Leventhal, 389 F.3d 1, 3 (collecting cases).

For instance, if the Court eventually orders GCAG, as requested, to desist from opposing FIADAH's trademark requests before the United States Patent and Trademark Office, FIADAH would probably *save* more than $35,000. Of course, this figure does not magically appear out of thin air. Instead, the Court relies on the highly persuasive statistics of the American Intellectual Property Law Association, which were provided by

GCAG in the notice of removal.  <u>See</u> Docket No. 1-4.  According to these statistics, the median litigation costs in 2013 for trademark oppositions/cancellations were $80,000.  <u>Id.</u>  Further, for the years prior to 2013, the median litigation costs consistently hovered around this amount as well.  <u>Id.</u>

Notwithstanding, FIADAH avers that these statistics are inapplicable as they are based on the hourly rates of attorneys in the continental United States, "which usually double the rates of even the highest paid attorneys in Puerto Rico."  <u>See</u> Docket No. 7, p. 9.[7]  The difficulty with FIADAH's position is that—even assuming that there is only one trademark opposition—cutting the $80,000 figure in half would still yield an amount well in excess of $35,000 saved.  Further, the Court notes that these statistics refer to *all* litigation costs, not just attorneys' fees.  Hence, a reduction of attorneys' fees will not have quite the effect on reducing the $80,000 proffer as FIADAH would hope for.

Lastly, the Court emphasizes that it need not be certain that these figures are accurate; instead, the standard is that the Court deem that GCAG has demonstrated that there be a "reasonable probability" that these figures yield an amount in excess of $75,000.  The Court is satisfied with GCAG's proffer and rules that it has successfully carried this burden.  The Court need proceed no further.

### V.   IN THE END, THIS IS ONLY THE BEGINNING

For all of the abovementioned reasons, the Court hereby **DENIES** FIADAH's motion to remand.  The Court rules that GCAG has demonstrated that there is a

---

[7] As opposed to the previously excluded attorneys' fees that are sought "in this suit," the Court finds that the potential attorneys' fees that would be saved in the separate trademark proceeding (if the Court were to order GCAG to desist) are a cost that should be included in the calculation because it is part of the "judgment's pecuniary consequences to those involved in the litigation." <u>Leventhal</u>, 389 F.3d 1, 3.

- 11 -

"reasonable probability" that the amount in controversy exceeds the jurisdictional requirements of diversity jurisdiction.  See 28 U.S.C. § 1332.  As this case is now here to stay, FIADAH is hereby ordered to respond to the motion to dismiss at Docket No. 17 within the next twenty (20) days.  See Docket No. 23.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2015.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge